## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HARRY HUTT, et al.** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **NO. 04-03440** |
| | : | |
| **ALBERT EINSTEIN MEDICAL** | : | |
| **CENTER, et al.** | : | |
| | : | |
| **Defendants** | : | |

**Stengel, J.**                                                                 **September 28, 2005**

## <u>MEMORANDUM AND ORDER</u>

This action is nearly identical to more than 30 other lawsuits filed throughout the country's federal courts.[1]  These complaints filed on behalf of uninsured and indigent patients assert, *inter alia*, that private non-profit hospitals are required by federal and state law to provide "mutually affordable medical care" to patients without regard to their ability to pay.  Every other district court presented with the federal claims raised in the Complaint has uniformly granted the defendant's motion to dismiss.[2]  Defendants Albert Einstein Medical Center ("Einstein Medical Center"), Albert Einstein Healthcare Network ("Einstein Healthcare Network"), and Jefferson Health System ("Jefferson") (collectively "Defendants") moved to dismiss Plaintiffs' First Amended Complaint ("Complaint")

---

[1]<u>See, e.g.</u>, <u>Amato v. UPMC</u>, 371 F. Supp. 2d 752 (W.D. Pa. 2005); <u>Kizzire v. Baptist Health System, Inc.</u>, 343 F. Supp. 2d 1074 (N.D. Ala. 2004); <u>Cargile v. Baylor Health Care System</u>, No. 3:04-CV-1365-B (N.D. Tex. Aug. 10, 2005); <u>Kolari v. New York-Presbyterian Hosp.</u>, 04-CIV-5733LAP, 2005 WL 710452 (S.D.N.Y. March 29, 2005); <u>Darr v. Sutter Health</u>, 04-CIV-02624, 2004 WL 2873068 (N.D. Cal. Nov. 30, 2004).

[2]Particularly persuasive are the <u>Amato</u> and <u>Kolari</u> decisions noted <u>supra</u>.

pursuant to Federal Rule 12(b)(6).  Defendants have demonstrated that, like the other

actions filed throughout the country, Plaintiffs' claims have no basis in federal law.  I will

grant Defendants' motion as to Plaintiffs' federal law claims and decline to exercise

supplemental jurisdiction over Plaintiffs' state law claims for the reasons described infra.

## I.   BACKGROUND

Defendants form a private non-profit hospital system based in Philadelphia,

Pennsylvania.  Am. Compl. ¶ 21, 26.  Plaintiffs Harry Hutt and Donna McKeown are

uninsured individuals residing in Pennsylvania.[3]  Id. at ¶¶ 50, 61.  The gravamen of the

Complaint is that Defendants are registered as tax-exempt charitable entities under

section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).  Plaintiffs allege

that due to Defendants' tax-exempt status under the Internal Revenue Code ("IRC"),

Defendants entered into express or implied contracts with the United States, the

Commonwealth of Pennsylvania, and local government bodies and agreed to provide

affordable medical care to all hospital patients, to abstain from "humiliating" debt

collection practices, and to prevent any private entities from deriving a profit from

Defendants' healthcare operations.  Id. at ¶¶ 91-92.  Plaintiffs contend that Defendants

have breached their obligations to Plaintiffs and the purported class[4] as charitable and tax-

exempt entities by:  (1) charging excessive medical fees that significantly exceed those

---

[3]The Complaint initially states that plaintiff McKeown had Medicare coverage during her medical treatment, but thereafter describes Plaintiffs and the purported class as uninsured persons.  Am. Compl. ¶ 61.

[4]Plaintiffs bring this action on behalf of a class consisting of "all persons who received any form of healthcare treatment from [Defendants] and who were uninsured at the time of treatment."  Am. Compl. ¶ 76.

charged to insured patients or patients covered by the federal Medicare or Medicaid programs, (2) charging excessive medical fees that exceed Defendants' actual costs of providing the medical services, (3) using improper debt collection practices, and (4) allowing nonprofit entities to earn a profit from the use of Defendants' tax-exempt hospitals.  Am. Compl. at ¶ 37.  Plaintiffs also allege that Defendants forced them to sign form "payment guarantees" for an unspecified amount as a condition to receiving medical treatment.  Id. at ¶¶ 52, 63.

Plaintiffs filed this purported class action lawsuit on August 25, 2004.  The 54-page, 234-paragraph Complaint alleges claims for:  (1) third-party breach of contract, (2) breach of contract, (3) an implied right of action under 26 U.S.C. § 501(c)(3), (4) breach of the duty of good faith and fair dealing, (5) breach of a public charitable trust, (6) violation of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, (7) unjust enrichment, (8) injunctive/declaratory relief, (9) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692-1692o, (10) violation of 42 U.S.C. § 1983 and violations of the 5th and 14th Amendments of the United States Constitution, (11) fraud, (12) constructive fraud, (13) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. § 201-1, (14) civil conspiracy, and (15) aiding and abetting.[5]

---

[5]Plaintiffs' aiding and abetting claim applies only to the AHA and is addressed in a separate memorandum.

3

The Complaint seeks monetary damages, injunctive and declaratory relief, and a constructive trust to be imposed on Defendants':  (1) federal, state, and local tax exemption savings, (2) profits obtained from uninsured patients, and (3) net assets and revenues in an amount sufficient to provide "mutually affordable medical care" to Plaintiffs and the entire purported class.  Am. Compl. ¶ 235.  The allegations raised in this case are nearly identical to those asserted in a wave of recently filed cases across the United States.  On October 19, 2004, the Judicial Panel on Multidistrict Litigation denied a motion to consolidate these cases for coordinated pretrial proceedings.  See In re Not-For-Profit Hosps./Uninsured Patients Litig., 341 F. Supp. 2d 1354, 1355-56 (J.P.M.L. Oct. 19, 2004).

## II.     Standard for a Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  A federal court may grant a motion to dismiss only where "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004) (quoting Conley, 355 U.S. at 45-46). In determining whether to grant a motion to dismiss, a federal court must construe the

complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  <u>Carino</u>, 376 F.3d at 159.  <u>See also</u> <u>D.P. Enters. v. Bucks County Cmty. Coll.</u>, 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim.  <u>Conley</u>, 355 U.S. at 47.  Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  <u>Id.</u>  A plaintiff, however, must plead specific factual allegations.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  <u>See</u> <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997); <u>Sterling v. Southeastern Pennsylvania Transp. Auth.</u>, 897 F. Supp. 893 (E.D. Pa. 1995).  Accordingly, "a court should not grant a motion to dismiss 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Conley</u>, 355 U.S. at 45-46; <u>Graves v. Lowery</u>, 117 F.3d 723, 726 (3d Cir. 1997).

## III.   DISCUSSION

### A.   Plaintiffs' Federal Law Claims

#### 1.   The Third-Party Beneficiary of a "Government Contract" Claim

Plaintiffs claim that they are third-party beneficiaries to a contract between Defendants and the United States government, the Commonwealth of Pennsylvania, and local government entities based on defendant Einstein's tax-exempt status under 26

5

U.S.C. § 501(c)(3).  Am. Compl. ¶ 91-92.  Under this alleged "contract," the United

States government granted Einstein tax-exempt status in exchange for Einstein's

agreement to meet a number of specific obligations.[6]  Plaintiffs claim that Defendants

have breached this contract and that they did not receive the intended benefit of the

agreement.  Id. at ¶ 94.  Plaintiffs' claim fails for several reasons.

As an initial matter, the IRC prevents Plaintiffs from enforcing any section of the

IRC without the authorization of the Secretary of the Treasury and the United States

Attorney General.  The IRC provides that "[n]o civil action for the collection or recovery

of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary

authorizes . . . the proceedings and the Attorney General . . . directs that the action be

commenced."  26 U.S.C. § 7401.

Even if Plaintiffs could bring their third-party breach of contract claim under the

IRC, section 501(c)(3) does not create a contract as Plaintiffs allege.  In Nat'l R.R.

Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co., 470 U.S. 451 (1985), the

Supreme Court held:

> [A]bsent some clear indication that the legislature intends to bind itself
> contractually, the presumption is that "a law is not intended to create private
> contractual or vested rights . . . ."  This well-established presumption is

---

[6]In particular, the Complaint alleges that by accepting tax-exempt status, Einstein agreed:  (1) to operate exclusively for charitable purposes, (2) to provide emergency room medical care to Plaintiffs and the class Plaintiffs seek to represent without regard to their ability to pay, (3) to provide affordable medical care to Plaintiffs and the purported class, (4) not to pursue outstanding medical debts from Plaintiffs and the entire class by engaging in "aggressive, abusive, and humiliating collection practices," and (5) not to produce profits for other entities.  Am. Compl. ¶ 92.

> grounded in the elementary proposition that the principal function of a
> legislature is not to make contracts, but to make laws that establish the
> policy of the state.

Nat'l R.R. Passenger Corp., 470 U.S. at 466.  See also Thompson v. Thompson, 484 U.S.
174, 179 (1988) (stating that Congress's intent in enacting a statute is always the "focal
point" for determining whether a statute provides a private right of action).

In this case, the language of IRC section 501 does not indicate that Congress
intended to create contract rights for United States citizens.  Instead, the statute merely
identifies a number of organizations which are exempt from federal income taxes and
identifies the requirements these organizations must meet.  See 26 U.S.C. §§ 501(a)-
501(c).  Other courts have refused to find that the IRC provides private contractual rights.
See, e.g., McLaughlin v. Comm'r of IRS, 832 F.2d 986, 987 (7th Cir. 1987) ("[t]he notion
that the [IRC] is contractual or otherwise consensual in nature is not only utterly without
foundation but . . . has been repeatedly rejected by the courts").  See also Demes v. United
States, 52 Fed. Cl. 365, 369 (Cl. Ct. 2002) (holding that plaintiffs who alleged they were
third-party beneficiaries of a government obligation created by the IRC failed to state a
claim upon which relief could be granted).  As noted by the Western District of
Pennsylvania in Amato v. UPMC, 371 F. Supp. 2d 752, 755-56 (W.D. Pa. 2005), the
Supreme Court has long declined to accept the argument that a tax exemption creates a

contract.  See Stanislaus County v. San Joaquin & King's River Canal & Irrigation Co,

192 U.S. 201, 210 (state statute exempting lands from taxation did not create a contract

with private party).

Even if Plaintiffs could establish that a contract created under section 501(c)(3)

exists, they still could not recover the relief they seek.  Third-party beneficiaries generally

have no more rights under a contract than the party who contracted on their behalf.  See

United Steelworkers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. 362, 375 (1990);

Miller v. Allstate Ins. Co., 763 A.2d 401, 405 n.1 (Pa. Super. Ct. 2000) ("[u]nder

Pennsylvania law, a third party beneficiary's rights and limitations in a contract are the

same as those of the original contracting parties").

In this case, Plaintiffs seek, *inter alia*, monetary damages and a constructive trust

to be imposed on Defendants' tax exemption savings.  The only right of the United States

(the party allegedly contracting on behalf of Plaintiffs) under the purported section

501(c)(3) contract would be to assess and collect federal taxes from Defendants if they

failed to comply with the terms of the tax exemption.  See 26 U.S.C. §§ 4958, 6201,

6212-13; see also Kolari v. New York-Presbyterian Hosp., 04-CIV-5733LAP, 2005 WL

710452 (S.D.N.Y. March 29, 2005).  Thus, even as third-party beneficiaries to a section

501(c)(3) contract Plaintiffs could not obtain relief.

Plaintiffs attempt to bolster their argument that section 501(c)(3) creates a contract by analogizing that statute to the Hill-Burton Act, codified at 42 U.S.C. § 291.  Pls. Memo. in Opp. at 29.  The Hill-Burton Act is a government program that awarded building or renovation funds to hospitals who served indigent patients.  See 42 U.S.C. § 291.  Plaintiffs argue that because some courts have construed the Hill-Burton Act as creating a contract between the government and hospitals, section 501(c)(3) should create a similar contract.  Pls. Memo. in Opp. at 291.

Plaintiffs' analogy fails upon closer scrutiny.  As noted in Lorens v. Catholic Health Care Partners, 356 F. Supp. 2d 827, 832 (N.D. Ohio 2005), the Hill-Burton Act differs substantially from section 501(c)(3) for a number of reasons:

> The Hill-Burton Act provided direct funds to hospitals; 501(c)(3) provides tax exemptions.  The Hill-Burton Act required applicants to sign a "Memorandum of Agreement" containing express contractual language; 501(c)(3) recognition is accorded by the IRS with no such contractual agreement.  See Euresti v. Stenner, 458 F.2d 1115, Appx. (10th Cir. 1972). The Hill-Burton Act provided funds for organizations performing specific, pre-negotiated purposes; 501(c)(3) provides tax exemptions to organizations for multiple permissible purposes.  Hill-Burton provided for a private cause of action to enforce the Act, see 42 U.S.C. § 300s-6; 501(c)(3) only permits the IRS or the organization seeking tax exemption to challenge a determination on 501(c)(3) eligibility.  See 26 U.S.C. § 7428(a). Therefore, while the Hill-Burton Act created a contract by virtue of its conditional government grants, 26 U.S.C. 501(c)(3) [does] not create such a contract.

Lorens, 356 F. Supp. 2d at 832.  Plaintiffs' analogy to the Hill-Burton Act fails for the reasons described in Lorens.  There is simply no legal support for the view that section

501(c)(3) creates a contractual relationship between Defendants and the United States government of which Plaintiffs are third-party beneficiaries.  Accordingly, this Court grants Defendants' motion as to the third-party beneficiary claim.

### 2. The Breach of Public Charitable Trust Claim

Plaintiffs claim that (1) Defendants created a public charitable trust "to provide mutually affordable medical care to their uninsured patients" by accepting tax-exempt status under 26 U.S.C. § 501(c)(3), (2) Plaintiffs and the purported class are the intended beneficiaries of the public trust, and (3) Defendants have breached their trust obligations. Am. Compl. ¶¶ 121-23.  This Court grants Defendants' Motion to Dismiss with regard to the charitable public trust claim for the reasons discussed in the following section.

First, section 501(c)(3) does not create a private right of action for third-party claims.  "Private rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001).  No private cause of action exists unless a statute indicates Congress's intent to create one.  Id. at 286-87.  In cases such as this, the courts may not create a private cause of action when the statute displays no such Congressional intent.

Plaintiffs contend that section 501(c)(3) creates an implied public charitable trust despite the lack of any such language in the statute or any indications of Congressional intent.  They argue that language in Simon v. E. Kentucky Welfare Rights, 426 U.S. 26 (1976), supports their claim that section 501(c)(3) creates a public charitable trust.  Pls.

10

Memo. in Opp. at 28.  Specifically, Plaintiffs note that the Supreme Court cited Internal

Revenue Service ("IRS") Rev. Rul. 56-185 (1956), and stated that the ruling "established

the position of the IRS that the term 'charitable' in its legal sense and as used in [section]

501(c)(3) of the Code contemplates an implied trust constituted for some public benefit."

<u>Simon</u>, 426 U.S. at 29.

Plaintiffs' reading of the <u>Simon</u> decision as supporting the creation of a public

charitable trust by Defendants simply accepting tax-exempt status under section 501(c)(3)

is misguided.  As noted by the <u>Amato</u> court, Rev. Rul. 56-185 does not "evince the

creation of a charitable trust to which [Plaintiffs] are intended beneficiaries."  <u>Amato</u>, 371

F. Supp. 2d at 757.  Instead, the revenue ruling merely contains IRS policy regarding an

organization's qualification for tax-exempt status under section 501(c)(3).  <u>Id.</u>  Indeed, the

first sentence of Rev. Rul. 56-185 states that it contains "[c]riteria or tests to be met in

determining whether a hospital qualifies for exemption from Federal income tax."  Rev.

Rul. 56-185 (1956).  Thus, Plaintiffs' have no claim for the creation of an implied public

charitable trust under Rev. Rul. 56-185.

Second, Plaintiffs have failed to allege that Defendants manifested any intent to

create a charitable trust.  As provided in the Restatement (Second) of Trusts:  "[a]

charitable trust is created only if the settlor properly manifests an intention to create a

charitable trust."  RESTATEMENT (SECOND) OF TRUSTS § 351.  In this case, Defendants

would be the settlors of any public charitable trust created by accepting tax-exempt status

11

under section 501(c)(3).  The Complaint does not allege any facts stating or inferring that Defendants intended to create a charitable trust when they accepted tax-exempt status under the IRC.  As a result, Plaintiffs' claim fails.

Finally, even if this Court were to find that a public charitable trust had been established by section 501(c)(3), Plaintiffs lack standing to enforce their claim.  The Restatement (Second) of Trusts provides in pertinent part:  "[a] suit can be maintained for the enforcement of a charitable trust by the Attorney General or other public officer, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust."  RESTATEMENT (SECOND) OF TRUSTS § 391.  See also RESTATEMENT (SECOND) OF TRUSTS § 391 comment (d) ("[t]he mere fact that . . . members of the public . . . benefit from enforcement of the trust is not a sufficient ground to entitle them to sue"); Valley Forge Historical Soc'y v. Washington Mem'l Chapel, 426 A.2d 1123, 1127 (Pa. 1981) ("[a] person whose only interest in compelling a charitable organization to perform a duty . . . to the public is that interest held in common with other members of the public cannot compel the performance of a duty owed by the organization to the public").

In this case, Plaintiffs allege that the class they hope to represent contains "thousands of individuals and therefore is so numerous that joinder is impracticable." Am. Compl. ¶ 80.  Plaintiffs themselves have alleged that they share their breach of public charitable trust claim with so many other persons that they have no interest distinct from other members of the public.  Consequently, Plaintiffs' claim fails because they lack

12

standing to sue.  Amato, 371 F. Supp. 2d at 758.  Plaintiffs have failed to sufficiently

allege a breach of public charitable trust, and this Court grants Defendants' Motion to

Dismiss to the extent the claim is based on federal law.

### 3.    The Implied Right of Action Under Section 501(c)(3) Claim

Plaintiffs allege that they have an implied right of action resulting from

Defendants' failure to meet their (Defendants) purported obligations under section

501(c)(3).  Am. Compl. ¶ 113.  This claim fails for the same reasons as the third-party

breach of contract and the breach of public charitable trust claims.  Defendants' Motion to

Dismiss is granted with respect to Plaintiffs' implied right of action under 26 U.S.C.

§ 501(c)(3) claim.

### 4.    The EMTALA Claim

Plaintiffs allege that Defendants violated the Emergency Medical Treatment and

Active Labor Act ("EMTALA") by requiring uninsured patients to personally guarantee

full payment before providing medical service.  Am. Compl. ¶ 128.  The EMTALA

generally requires participating hospitals to provide emergency treatment for all patients

in certain situations and to follow particular procedures when providing that treatment.

See 42 U.S.C. § 1395dd.  Following the trend with the identical cases filed in other

district courts, Plaintiffs fail to specify which subsection of the EMTALA Defendants

have violated.  See, e.g., Amato, 371 F. Supp. 2d at 758.  Plaintiffs' claim appears to most

closely correspond to 42 U.S.C. § 1395dd(h), which provides in pertinent part "[a] participating hospital may not delay provision of an appropriate medical screening examination . . . or . . . medical examination and treatment . . . in order to inquire about the individual's method of payment or insurance status."  42 U.S.C. § 1395dd(h).

The EMTALA does not prevent a hospital from inquiring into a patient's ability to pay for medical care so long as any inquiry does not delay the screening or treatment. The Department of Health and Human Services has promulgated regulations allowing such an inquiry:

> Hospitals may follow reasonable registration processes for individuals for whom examination or treatment is required by this section, including asking whether an individual is insured and, if so, what that insurance is, as long as that inquiry does not delay screening or treatment.  Reasonable registration processes may not unduly discourage individuals from remaining for further evaluation.

42 C.F.R. § 489.24(d)(4)(iv).

In this case, Plaintiffs have not alleged that Defendants' inquiry into their ability to pay has delayed or discouraged them from receiving medical treatment.  Am. Compl. ¶ 128  Instead, Plaintiffs broadly allege that Defendants inquired about their ability to pay and required them to sign form contracts agreeing to pay for their medical care in full—both of which constitute reasonable registration processes as allowed by the regulation.  Accordingly, this Court dismisses Plaintiffs' EMTALA claim.

14

### 5.     The FDCPA Claim

Plaintiffs allege that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by "conspir[ing] with and direct[ing] their collection agents to collect deceptive debts."  Am. Compl. ¶ 145.  The FDCPA applies only to a "debt collector," defined in the statute as:

> [A]ny person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*. . . .

15 U.S.C. § 1692a(6) (emphasis added).  The FDCPA specifically excludes the following from the definition of debt collector:

> [A]ny person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.

15 U.S.C. § 1692a(6)(B).

In this case, Defendants are not "debt collectors" under the FDCPA's general definition as a matter of law.  According to the Complaint, Defendants have "conspired with and directed their collection agents to collect deceptive debts."  Am. Compl. ¶ 145.  Defendant Einstein Medical Center cannot be a debt collector under the FDCPA because, under the facts alleged by Plaintiffs, the hospital would be collecting its own debts.  <u>See</u>

15 U.S.C. § 1692a(6).  Neither could defendants Einstein Healthcare Network or

Jefferson be debt collectors under the statute in light of their common ownership and

affiliation with Einstein Medical Center.  See 15 U.S.C. § 1692a(6)(B).

Notably, Plaintiffs do not name any possible third-party collection agents who

might fit within the FDCPA definition.[7]  Rather, Plaintiffs claim that Defendants

collected their own debt using names other than their corporate names and appear to

claim that Defendants' actions fall within the false name exception to the FDCPA.  The

false name exception is included in section 1692a(6)'s definition of "debt collector," and

provides in pertinent part:  "the term [debt collector] includes any creditor who, in the

process of collecting his own debts, uses any name other than his own which would

indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C.

§ 1692a(6).  Furthermore, section 1692(e)(14) provides that "[t]he use of any business,

company, or organization name other than the true name of the debt collector's business

or company" constitutes a violation of the FDCPA.  15 U.S.C. § 1692e(14).

In this case, Plaintiffs have alleged that "[u]pon information and belief,

[Defendants] have collected debt for themselves using names that are not their corporate

names or the names in which they do business with the public as health care

---

[7]In any event, a creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector in the creditor's employ.  Flamm v. Sarner & Associates, 02-CIV-4302, 2002 WL 31618443, at *4 (E.D. Pa. 2002) (citing Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 107 (6th Cir. 1996)).

providers." Am. Compl. ¶ 142.  By reading the false name exception of section 1692(a)(6) together with section 1692(e)(14), Plaintiffs may have alleged a sufficient claim for relief under the FDCPA sufficient to withstand Rule 12(b)(6).[8]

Regardless of whether the Complaint alleges a viable FDCPA claim, Defendants have raised the statute of limitations as a defense and Plaintiffs' FDCPA claim is time-barred.  Pursuant to Section 1692k(d), a claim under the FDCPA must be brought within one year of the alleged violation.[9]  15 U.S.C. § 1692k(d).  In addition, the FDCPA's statute of limitations is not subject to waiver or tolling.  Zhang v. Haven-Scott Assoc., Inc., 95-CIV-2126, 1996 WL 355344, at *10 (E.D. Pa. 1996); Mattson v. U.S. West Comms., Inc., 967 F.2d 259 (8th Cir. 1992).

Here, Plaintiffs filed their original complaint on July 21, 2004.  In the Complaint, Plaintiffs initially allege that Defendants' violation of the FDCPA occurred soon after they received their medical treatment.  See Am. Compl. ¶¶ 53 ("harassing collection efforts" as to Hutt in 1993), 63 ("repeated and harassing letters and phone calls" received by McKeown "soon" after her surgery in "approximately 2000 or 2001").  Thereafter, the Complaint presents the conclusory allegation that Defendants' violations continued until

---

[8]Conspicuously missing from Plaintiffs' Complaint, however, are facts alleging that Defendants used a name which would indicate that it was a third person collecting the debt.  See 15 U.S.C. § 1692a(6).

[9]Section 1692k(d) provides in pertinent part: "[a]n action to enforce any liability created by this title [15 U.S.C. § 1692-1692o] may be brought in any appropriate United States District Court without regard to the amount in controversy, or in any other court of competent jurisdiction, *within one year from the date on which the violation occurs*."  15 U.S.C. § 1692k(d) (emphasis added).

the date the Complaint was filed.  See Am. Compl. ¶¶ 54, 63.  Under Morse, 132 F.3d at

906, this Court need not accept Plaintiffs' "vague and conclusory allegations" of

Defendants' latter FDCPA violations.  Consequently, Plaintiffs' equitable tolling

arguments are therefore misplaced as a matter of law and this Court dismisses Plaintiffs'

FDCPA claim as barred by the statute of limitations.

### 6.    The 42 U.S.C. § 1983 Claim

The Complaint alleges that Defendants violated Plaintiffs' equal protection rights

under the 5th and 14th Amendments to the United States Constitution by charging

unequal fees for similar medical care and engaging in improper debt collection.  Am.

Compl. ¶ 163-65.  To state a claim under section 1983, a plaintiff must allege the

deprivation of a federally protected right by a person or entity acting under color of state

law ("state action").  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999); Lake v.

Arnold, 112 F.3d 682, 689 (3d Cir. 1997).  The Supreme Court has developed four tests

to satisfy the state action requirement:  (1) the close-nexus test, (2) the government

compulsion test, (3) the traditional government function test, and (4) the symbiotic

relationship test.  See Rendell-Baker, 457 U.S. at 841-42.  Even extensive state regulation

of an organization or industry does not convert private action into state action without

more.  Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974).  The Supreme Court has

18

also held that no state action existed when a nursing home with patients receiving state Medicaid benefits decided to transfer those patients to another hospital. <u>Blum v. Yaretsky</u>, 459 U.S. 991, 1011 (1982).

In this case, Plaintiffs fail to allege any facts demonstrating how Defendants' medical care pricing or debt collection practices are attributable to the government. The Complaint alleges no specific facts meeting any of the Supreme Court's state action tests, and the mere fact that Defendants used or complied with state and federal laws does not transform purely private activity into state action. Accordingly, this Court dismisses Plaintiffs' section 1983 claim for failing to sufficiently allege state action.

**B.     Plaintiffs' State Law Claims**

The Supreme Court has indicated that "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1998). Thus, in the

19

absence of a viable federal claim, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.[10]  28 U.S.C. § 1367(c)(3); <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966); <u>Amato</u>, 371 F. Supp. 2d at 759.

## IV.    CONCLUSION

For the reasons described above, I grant Defendants' Motion to Dismiss.  An appropriate order follows.

---

[10]Specifically, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims for: (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) unjust enrichment, (4) injunctive and declaratory relief, (5) fraud, (6) constructive fraud, (7) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and (8) civil conspiracy.

## <u>ORDER</u>

**AND NOW,** this        day of September, 2005, upon consideration of Defendants' Motion

to Dismiss (Doc. No. 22) and all responses thereto, it is hereby **ORDERED** that the

motion is **GRANTED**.


BY THE COURT:



_____

**LAWRENCE F. STENGEL, J.**